John L. Amsden, Esq. (Bar No. 1746)
BECK & AMSDEN, PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel: (406) 586-8700
amsden@becklawyers.com
*Attorney for Estate of Renascent Inc.*

Jon R. Binney, Esq. (Bar No. 2895)
Elizabeth A. Ries-Simpson, Esq. (Bar No. 4301)
BINNEY LAW FIRM, PC
PO Box 2253
Missoula, MT 59806-2253
Tel: (406) 541-8020
jon@binneylaw.com
*Attorneys for Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>RENASCENT INC.<br><br>   Debtor. | Case No: 10-62358-11 |
| RENASCENT INC.<br>   Plaintiff,<br>         v.<br>COUNTRYWIDE HOME LOANS INC.; BAC HOME LOAN SERVICING LP fka COUNTRYWIDE HOME LOANS SERVICING LP; THORNBURG MORTGAGE SECURITIES TRUST 2007-3; RECONTRUST COMPANY NA; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.; JOANNE JOHNSON, the Ravalli, Montana, County Treasurer; and any or all persons, known or unknown, claiming or who might claim any right, title, estate, or interest in or lien or encumbrance upon the real property described in the Complaint adverse to Plaintiffs' ownership or any cloud upon Plaintiffs' title, whether the claim or possible claim be present or contingent,<br><br>   Defendants. | Adversary No. _____<br><br><br>**COMPLAINT** |

Plaintiff respectfully represents the following:

## PARTIES, JURISDICTION AND VENUE

1. This adversary proceeding is related to the Chapter 11 bankruptcy case of Renascent Inc. ("Debtor" or "Plaintiff" herein) which was filed in the United States Bankruptcy Court for the District of Montana on September 29, 2010.

2. At issue herein is a tract of real estate owned by the Debtor located at 81 Bell Crossing, Victor, Montana ("the Property).

3. Defendant Countrywide Home Loans Inc. ("Countrywide") is the real estate lender that in 2006 originated an interest-only adjustable rate loan, secured by a Deed of Trust on the Property. This Defendant was subsequently purchased by the Bank of America Corporation.

4. Defendant BAC Home Loan Servicing LP formerly known as Countrywide Home Loans Servicing LP ("BAC Home Loans") is a member of the Bank of America Corporation family of companies. At relevant times, this Defendant has claimed to hold a secured interest in the Property.

5. Defendant Thornburg Mortgage Securities Trust 2007-3 ("Thornburg") is an investment trust fund that purports to hold notes and security instruments related to real property in Montana. At relevant times, this Defendant

has claimed to hold a secured interest in the Property and has filed a Proof of Claim against Debtor, Claim #11, in Case No. 10-62358.

6. Defendant Recontrust Company NA ("Recontrust") is member of the Bank of America Corporation family of business. This Defendant specializes in conducting foreclosures on real estate. At relevant times, Recontrust purported to be the "Trustee appointed under and pursuant to the Trust Indenture" related to the Property. In that capacity, in May of 2010, Recontrust noticed a Trustee's Sale on the Property.

7. Defendant Mortgage Electronic Registration Systems Inc. ("MERS") is a business entity that purports to provide electronic mortgage registration services to the mortgage industry. At relevant times, MERS has purported to be the "Nominee of Lender," obligee "as Beneficiary," or grantor in connection with the Note and Deed of Trust related to the Property.

8. Defendant JoAnne Johnson is the County Treasurer for Ravalli County, Montana, where the Property is located.

9. The named or unnamed Defendants are parties who claim or may claim some right, title, estate or interest in the Property.

10. Defendants' claims are without any right and Defendants have no legitimate estate, right, title or interest in or lien or encumbrance upon the Property.

11. This is an adversary proceeding to determine the nature and extent of liens in the Property; relates to matters concerning administration of the bankruptcy estate; allowance of claims against the estate; and for damages against the named Defendants and DOES 1 thru 20.

12. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334; 28 U.S.C. §157(b)(1); 28 U.S.C. § 157(b)(2)(A); and 28 U.S.C. §157(b)(2)(B); Bankruptcy Rule 7001; and 11 U.S.C. 105(a). This is a core proceeding.

13. Venue in this case is proper pursuant to 28 U.S.C. § 1409(a).

## ALLEGATIONS COMMON TO ALL COUNTS

14. Plaintiff hereby incorporates every other allegation in this pleading, as if fully set forth herein.

15. The Property at issue herein consists of:

> A tract of land situated in the Northeast Quarter of the Northwest Quarter of Section 20, Township 8 North, Range 20 West, P.M.M., Ravalli County, Montana, described as beginning on a point which bears N.89°31'00 W., 544.4 feet from the corner common to Sections 17 and 20; thence S.00°09'50" E, 891.0 feet; thence N.89°31'00 W., 771.4 feet to the west line of said Northeast Quarter of the Northwest Quarter; thence N.00°20'54" W., 424.0 feet along the 1/16 line; thence S.89°31'00 E., 467.0 feet; thence N.00°20'54" W., 467.0 feet; thence S. 89°31'00 E., 307.3 feet along the section line to the point of beginning.

16. On July 12, 2006, Defendant Countrywide originated an interest-only, adjustable rate loan secured by a Note ("the Note") and Deed of Trust ("Deed of Trust") on the Property.

17. The Note identified Charles J. Peterson as a "Trustee."

18. In late 2009 or early 2010, Debtor began to have cash flow concerns.

19. Debtor began attempting to communicate with the owner of the debt with the intent of seeking a loan modification in the form of an acceleration of a scheduled conversion to a lower interest rate.

20. Debtor contacted the then-servicer of the loan, Defendant BAC Home Loans, to request such modification.

21. BAC Home Loans told Debtor that in order to obtain a loan modification, Debtor would have to default on its loan obligations.

22. Pursuant to that instruction, Debtor stopped making payments on the loan.

23. After Debtor stopped making payments, BAC Home Loans began contacting Debtor sometimes on a daily basis.

24. Through sometime in April of 2010, BAC Home Loans refused to put Debtor in touch with a loan modification officer and repeatedly failed to identify who was the current owner of the debt.

25. Eventually, Debtor was granted contact with one or more loan modification groups. Debtor believes he may have communicated with as many as three different loan modification groups located in different parts of the country.

26. At no time did anyone from any entity communicate to Debtor that there was going to be a foreclosure on the property. Debtor merely received a single notice of default.

27. Meantime, BAC Home Loans and its various loan modification groups continued to give Debtor the "run around," never identifying the current owner of the debt (despite repeated requests) and failing to negotiate a loan modification.

28. BAC Home Loans repeatedly told debtor that, varyingly, either that BAC Home Loans owned the debt or that it did not know who the current owner of the debt was.

29. Eventually, Debtor had to submit a "RESPA Request" to obtain any information concerning the owner of his loan.

30. In response to his RESPA Request, BAC Home Loans sent a brief response stating only that the "investor is Wells Fargo." No specific Wells Fargo entity was identified.

31. In fact, at no time has Wells Fargo ever been the owner of either the Note or the Deed of Trust.

32. On April 16, 2010, Debtor entered into a marketing agreement ("the Auction Agreement") with Concierge Auctions LLC ("Concierge") to auction the Property, then valued at significantly more than the amount due on the Note.

33. The guaranteed minimum bid in the Auction Agreement was $4.5 million, and Concierge estimated that the selling price would actually be between $6-8 million. Even the minimum bid was more than sufficient to completely pay off the Note.

34. The Auction Agreement contained a provision that Debtor would pay Concierge a $75,000 "engagement fee."

35. From mid-May 2010 through the end of June or July 2010, BAC Home Loans was calling Debtor almost every day, and Debtor repeatedly tried to explain about the pending auction that would have paid off the balance of the Note as well as a significant amount of Debtor's liabilities.

36. After BAC Home Loans (falsely) identified "Wells Fargo" as the owner of the debt, Debtor tried contacting Wells Fargo to discuss the pending auction and/or a loan modification. Of course, Wells Fargo could not find that it owned any loan made to Debtor.

37. On May 20, 2010, before the auction had been conducted by Concierge, Defendant Recontrust filed a Notice of Trustee's Sale of the Property in Ravalli County, Montana.

38. Reconstruct purported to be the "duly appointed Trustee" under the Deed of Trust which Reconstruct characterized as having "conveyed said real property to Charles J. Peterson . . . to secure an obligation owed to [MERS] as Beneficiary."

39. Elsewhere, the Notice of Trustee's Sale stated that the "beneficial interest" under the Trust Deed was "presently held by BAC Home Loans."

40. In fact, the day prior to Defendant Recontrust's filing of the Notice of Trustee's Sale, two purported assignments of the Deed of Trust were executed, one purporting to be from Defendant MERS to Defendant BAC Home Loans and one from BAC Home Loans to Defendant Thornburg.

41. These two purported assignments dated the day before the Notice of Trustee's sale was recorded were recorded at the same time and on the same day as the Notice of Trustee's Sale, May 21, 2010.

42. In any case, at the time of the recording of the Notice of Trustee's Sale, Defendants BAC Home Loans, Recontrust, and MERS did not have standing or any right to foreclose on the Property.

43. As a result of Defendants' filing a Notice of Trustee's Sale, Concierge cancelled the auction and demanded its full engagement fee, of which Debtor eventually paid $50,000.

44. In addition to Debtor's loss of the engagement fee, Defendants' conduct also prevented Debtor from obtaining the benefit through action of the equity then existing in the Property.

45. Sale of the real property would have resulted in payoff of all Debtor's secured debts.

46. Debtor's business plan was contingent upon the sale of the Property, and Debtor ended having to borrow money from Creative Finance to continue operating.

47. Defendants' conduct forced Debtor into Chapter 11 bankruptcy.

48. After Debtor filed for bankruptcy protection, Defendant Thornburg filed a Proof of Claim, which acknowledges that the property is worth twice as much as the amount owed pursuant to the Note.

## COUNT I – TO QUIET TITLE

### (Against All Defendants)

49. Plaintiff hereby incorporates every other allegation of this pleading as if fully set forth herein.

50. This is an adversary proceeding in which Plaintiff requests declaratory judgment quieting title to the Property. It is filed pursuant to Mont. Code Ann. § 70-28-101 *et seq.;* Fed. R. Civ. P. 57; and F.R.B.P. 7001(2).

51. Because none of the named or unnamed Defendants owns the Note and Deed of Trust, title should be quieted in Debtor's name.

## COUNT II – NEGLIGENCE

### (Against All Defendants Except JoAnne Johnson)

52. Plaintiff hereby incorporates every other allegation in this pleading, as if fully set forth herein.

53. Defendants all had duties to Plaintiff to act in commercially reasonable ways.

54. Defendants failed to act in commercially reasonable ways when they, inter alia: noticed a Trustee's Sale of the Property without standing to do so; failed to communicate with Debtor; failed to disclose to Debtor who owned the Note and Deed of Trust on the Property; and caused cancellation of the action that would have fully paid the Note and allowed Debtor to pay all of its other secured debts.

55. In breach of their duties, Defendants failed to deal with Debtor in a commercially reasonable manner, failed to hold legal title at the time of the threatened sale, failed to respond accurately and timely to Debtor's communications and failed to take reasonable steps to protect the value of the underlying property to Debtor and Debtor's other creditors.

56. As a result of Defendants' conduct, Plaintiff was damaged including by owing the engagement fee to Concierge, by losing its ability to realize the equity in the Property and by being forced into bankruptcy.

57. As a result of Defendants' breach of these duties, Debtor and its creditors have been harmed in an amount to be proven at trial.

## COUNT III – WRONGFUL FORECLOSURE

### (Against All Defendants Except JoAnne Johnson)

58. Plaintiff hereby incorporates every other allegation in this pleading, as if fully set forth herein.

59. Defendants had a legal duty to act with reasonable care in noticing a Trustee's Sale of the Property.

60. Defendants breached their legal duties to Plaintiff when they negligently noticed a foreclosure without standing to do so.

61. Defendants' breaches of duty caused injury to Plaintiff.

62. As a result of Defendants' conduct, Plaintiff suffered damages, including but not limited to lost equity, inability to pursue its business plan, additional borrowing, and payment of a penalty to the auctioneer.

## COUNT FOUR – INTERFERENCE WITH PROSPECTIVE ADVANTAGE

### (Against All Defendants Except JoAnne Johnson)

63. Plaintiff hereby incorporates every other allegation in this pleading, as if fully set forth herein.

64. Plaintiff and Concierge were pursuing reasonable and legitimate economic relationships with each other to auction the Property for an amount that would pay off all of Debtor's liabilities and allow it to pursue its business plan.

65. Defendants' conduct of Noticing a Trustee's Sale without standing to do so and despite the pending auction that would have more than paid the Note, was intentional and willful, and calculated to and did disrupt and interfere with Plaintiff's existing and future business endeavors.

66. Defendants' acts were done with the unlawful purpose of causing damage or loss to Plaintiff, and unjust enrichment to Defendants.

67. Plaintiff has been damaged by Defendants' interference with its business relationships and endeavors.

**WHEREFORE, Plaintiff prays for Judgment:**

1. That all Defendants and all persons claiming under them be required to set forth the nature of their claims in the above-described property.

2. That this Court enter judgment declaring that the Plaintiff is entitled to the quiet and peaceful possession of said property and that Defendants have no right, title, or interest in or lien or encumbrance upon the Debtor's real property.

3. That the validity of all claims to the Debtor's real property has been determined by decree by order of this Court.

4. That the Court's decree permanently enjoins Defendants and all persons claiming under them from asserting any adverse claim to the Plaintiff's title to said property.

5. That damages be awarded to Plaintiff in the amount to compensate it for Defendants' wrongful conduct.

DATED this 1st day of July 2011.

        BECK & AMSDEN, PLLC

        By:   /s/ John L. Amsden
               1946 Stadium Drive
               Bozeman, MT 59715

        *Attorney for Estate of Renascent Inc.*