## SETTLEMENT AGREEMENT and RELEASE
### (The "Agreement")

Date: November 4, 2011

Parties:    1.    Renascent, Inc., a Nevada corporation, c/o Jon Binney, Binney Law Firm, P.C., P.O. Box 2253, Missoula, MT 59806-2253 ("Renascent").

             2.    Keldan, Inc., a Nevada corporation, c/o Edward A. Murphy, Murphy Law Offices, PLLC, P.O. Box 2639, Missoula, MT 59806 ("Keldan").

**RECITALS:**

A.    Renascent, Inc. is the Debtor in bankruptcy in the United States Bankruptcy Court for the District of Montana, Case No. 10-62358-11 (the "Bankruptcy Case").

B.    Keldan, Inc. is a Nevada corporation which is owned and/or controlled by Daniel Floyd and Kelley Floyd (collectively "the Floyds"). Daniel Floyd and Kelley Floyd are husband and wife.

C.    In the Bankruptcy Case, Keldan filed Proof of Claim No. 1-1, on or about November 24, 2010, in the amount of $250,000 (the "Keldan Claim"). Renascent disputes and objects to the Keldan Claim.

D.    Renascent has filed an Adversary Proceeding against Keldan, Adversary No. 11-00042 (hereafter the "Adversary Proceeding"), to recover $800,000 from Keldan on the theory that Keldan received a fraudulent conveyance from Renascent in that amount. Keldan has answered the Adversary Complaint and has denied, and continues to dispute, that it owes any sums to Renascent.

E.    Renascent and Keldan have reached agreement on all issues between them concerning the Keldan Claim and the Adversary Proceeding, as set forth elsewhere in, and subject to the terms and provisions of, this Agreement.

**AGREEMENT:**

In consideration of the foregoing premises and the mutual promises herein contained, it is agreed as follows:

1.  **RECITALS INCORPORATED.** The foregoing Recitals are incorporated into this Agreement as if set forth in full.

2.  **PAYMENT.** Within ten (10) business days after satisfaction of the Contingency (*see* ¶ 6, below), Keldan shall pay to Renascent the sum of FIVE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($525,000.00).

Payment shall be by check payable to "Renascent, Inc., Debtor-In-Possession" and delivered to counsel for Renascent (Jon Binney, Binney Law Firm, P.C., P.O. Box 2253, Missoula, MT 59806-2253).

Except for any payment which may become due under ¶ 5, below, such payment includes the entire payment to be made hereunder or on account of the disputes between the parties and includes all attorneys' fees, costs and other expenses sustained in this matter and no further payment of any amount whatsoever is to be made by the either party hereto to the other party or to the attorneys or others whom the parties may have employed in connection with this matter.

3.  **DISMISSAL OF ADVERSARY PROCEEDING; RELEASE OF KELDAN.** Upon satisfaction of the Contingency (*see* ¶ 6, below), and upon receipt of the payment provided for in ¶ 2, above:

   A.  Renascent shall promptly cause the Adversary Proceeding to be dismissed, with prejudice, with each party to bear its own costs and attorneys fees; and

   B.  The following release shall become immediately effective:

Renascent, for itself and its past, present, and future bankruptcy estate,

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 2

bankruptcy trustee, shareholders, directors, officers, members, managers, partners, employees, agents, affiliates, accountants, insurers, indemnitors, attorneys, heirs, representatives, successors, and assigns (collectively in this paragraph "Releasors"), does hereby release and forever discharge Keldan (individually and as shareholder, director, officer, member, manager, partner, employee, agent or affiliate of any entity) and their past, present, and future shareholders, directors, officers, members, managers, partners, employees, agents, affiliates, accountants, insurers, indemnitors, attorneys, heirs, representatives, successors, and assigns, including but not limited to the Floyds, or either of them (collectively in this paragraph "Releasees") from any and all causes of action, suits, claims, demands, damages, judgments, losses, penalties, expenses (including, but not limited to, reasonable attorneys' fees), costs, settlements, and liabilities whatsoever which were asserted in or arise from or are related to the Adversary Proceeding and/or the Keldan Claim or the facts alleged as a basis for the claims asserted in the Adversary Proceeding and/or the Keldan Claim.

4.  **WITHDRAWAL OF CLAIMS; RELEASE OF RENASCENT.** Upon satisfaction of the Contingency (*see* ¶ 6, below):

A.  Keldan shall promptly withdraw, with prejudice, the Keldan Claim and any and all other claims which it has filed against the bankruptcy estate of Renascent in the Bankruptcy Case, and shall hereafter file or assert no claim against the bankruptcy estate of Renascent except for a claim arising under this Agreement; and

B.  The following release shall become immediately effective:

Keldan, for itself and its past, present, and future shareholders, directors, officers, members, managers, partners, employees, agents, affiliates, accountants, insurers, indemnitors, attorneys, heirs, representatives, successors, and assigns, including but not limited to the Floyds, or either of them (collectively in this paragraph "Releasors"), do hereby release and forever discharge Renascent (individually and as shareholder, director, officer, member, manager, partner, employee, agent or affiliate of any entity) and their past, present, and future bankruptcy estate, bankruptcy trustee, shareholders, directors, officers, members, managers, partners, employees, agents, affiliates, accountants, insurers, indemnitors, attorneys, heirs, representatives, successors, and assigns (collectively in this paragraph "Releasees") from any and all causes of action, suits, claims, demands, damages, judgments, losses, penalties, expenses (including, but not limited to, reasonable attorneys' fees), costs, settlements, and liabilities whatsoever

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 3

which were asserted in or arise from or are related to the Adversary Proceeding and/or the Keldan Claim or the facts alleged as a basis for the claims asserted in the Adversary Proceeding and/or the Keldan Claim.

5. **KELDAN'S CONTINGENT COVENANT TO PAY ADDITIONAL SUMS (NOT TO EXCEED $275,000) TO RENASCENT.**

The parties intend that Keldan shall fare no better and no worse than other holders of allowed unsecured claims against the Debtor. This paragraph shall be interpreted to effectuate that intention.

If, after payment of administrative expenses as allowed by the Court and provided for in the Chapter 11 plan, holders of allowed unsecured claims are paid in full, then Keldan shall not be obligated to make any repayment under this paragraph. If, however, there are insufficient funds to pay all allowed general unsecured claims in full, then Keldan, Inc., shall pay an additional amount, referred to herein as the "Additional Payment." The amount of the Additional Payment shall be the lesser of $275,000 or the sum determined according to the following subparagraphs A and B.

A. A computation would be made to determine the percentage each allowed unsecured claim has been paid in relation to payment in full (100%). The percentage difference between what the creditor is receiving and 100% would be computed (the "Deficiency Percentage"). For purposes of this subparagraph A, Keldan shall be deemed to have no allowed unsecured claim.

B. The deficiency percentage would then be multiplied against $275,000, which represents the difference between the amount that Keldan has agreed to pay to the estate ($525,000) and the total amount of the alleged fraudulent transfer ($800,000). The resulting sum is the Additional Payment.

Keldan shall pay that Additional Payment promptly upon demand, to the same payee and sent to the same address as the payment addressed in paragraph 2.

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 4

Any funds available for distribution to holders of allowed unsecured claims after the Additional Payment and after payment of any additional administrative expenses which may be allowed by the Court shall be distributed, *pro rata*, amongst the holders of allowed unsecured claims, including Keldan. For purposes of any such distribution (but not for any other purpose), Keldan shall be deemed to hold an allowed unsecured claim in the amount of $275,000.

As an example, if there are insufficient funds to pay general unsecured creditors in full and the creditors are 25% short of receiving payment in full (*i.e.* they are paid 75% of their claims), the Deficiency Percentage would be 25%. That would be multiplied against $275,000, resulting in an Additional Payment from Keldan of $68,750 (25% of $275,000).

6.    **CONTINGENCY; PROCEDURE.** This Agreement, and the parties' obligations hereunder, are contingent upon Bankruptcy Court approval of this settlement.

Promptly after full execution of this Settlement Agreement, Mr. Binney (counsel for the Debtor) shall move the Bankruptcy Court for such approval. The parties hereto shall not oppose such motion, and shall fully cooperate in obtaining court approval including, if requested or appropriate, appearing at the hearing on the motion for approval to provide testimony.

This Contingency shall be deemed satisfied upon Bankruptcy Court approval of this settlement.

The parties shall perform promptly (meaning within ten business day) after satisfaction of the Contingency.

If the Contingency is not satisfied, then this Agreement shall be null and void *ab initio*, and of no force and effect, and the parties shall be restored to their prior position as if this Agreement had never existed.

7.    **NO SUITS.** Each party further agrees and covenants that neither they, nor any

person, organization, or other entity on their behalf, will file a charge, claim, sue, or cause or permit to be filed, charged, or claimed any action for legal or equitable relief (including damages, injunctive, declaratory, monetary relief, or other) involving any matter which is the subject of the foregoing releases, except as follows: Nothing herein shall be deemed to waive or release claims to construe, enforce, or seek damages for breach of this Agreement.

8.     **FURTHER ACTS.** Each party shall do all other and further acts as may be necessary or appropriate to effectuate the parties' intent as expressed in this Agreement.

9.     **MISCELLANEOUS PROVISIONS.**

A.     **No Assignment.** Each party hereto warrants and represents that such party has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any of the claims set forth in Paragraph 2 herein or any portion thereof or any interest therein, and that such party has the right to release such claims.

B.     **Authority to Execute.** Each party hereto which is an entity (corporation, limited liability company, partnership, or otherwise) warrants and represents that the individual executing this Agreement on behalf of such party is authorized to do so on behalf of such party and that, by such execution, this Agreement will become binding upon such party.

Each individual executing this Agreement on behalf of any other person (whether another individual or an entity (corporation, limited liability company, partnership, or otherwise) warrants and represents that he or she is authorized to do so on behalf of such other party and that, by such execution, this Agreement will become binding upon such other party.

C.   **Representations; Expenses of this Agreement.**   In the course of negotiating, drafting and execution of this Agreement, Renascent has been represented by attorneys Robert Baldwin and Trent M. Gardner of Goetz, Gallik & Baldwin, P.C., and Keldan has been represented by attorney Edward A. Murphy of Murphy Law Offices, PLLC. Each party shall bear their own costs and attorney fees in connection with the negotiation, drafting and execution of this Agreement.

D.   **No Inducement.**   Each party declares and represents that no promise, inducement, or other agreement not expressly contained herein has been made and that this Agreement, contains the entire agreement of the parties.

E.   **Binding Effect.**   The terms of this Agreement are contractual and not recitals only. This Agreement shall bind and shall inure to the benefit of each party hereto, and their respective heirs, successors and assigns.

F.   **Final Agreement.**   Each party fully understands that if the facts in respect to which this Agreement are executed are found hereafter to be different from facts now believed by that party to be true, such party expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such differences.

G.   **Entire Agreement.**   This Agreement sets forth the entire agreement between the parties hereto and fully supersedes and terminates any and all prior agreements, understandings, and contracts, implied and express, written and oral, between the parties concerning the subject matter of this Agreement.

**H.  No Modifications Except in Writing.** This Agreement shall not be altered, amended, or modified in any respect except by a writing duly executed by all the parties hereto.

**I.  Voluntary and Knowing Execution of this Agreement.** The parties represent and agree that they are fully aware of their right to discuss any and all aspects of this matter with an attorney and that they have done so or have had opportunity to do so, that they have carefully read and fully understand all the provisions of this Agreement, and that they are voluntarily entering into this Agreement and have not been influenced by any person or any attorney acting on behalf of any other party.

**J.  No Admission.** This Agreement shall not in any way be interpreted or construed as an admission by any party of any wrongful acts whatsoever against any other party or any other person, and the parties hereto specifically disclaim any liability to or wrongful act against any person whomsoever, on the part of themselves, their employees, agents, or other representatives. Each party to this Agreement denies any liability associated with claims by the other and any claims described herein.

**K.  Good Faith.** The parties hereto agree that they have dealt fairly and in good faith in all respects with regard to this Agreement, and all other matters between them.

**L.  Admissibility of this Agreement.** This Agreement may be used and admitted into evidence for any purpose permissible under the applicable rules of evidence in any action to construe or enforce its terms or to seek damages

for breach thereof.

**M.**    **Headings/Number and Gender.** Paragraph numbers and headings are used herein for convenience only and shall have no force and effect in the interpretation or construction of this Agreement. As used in this Agreement, the singular shall include the plural and the masculine, the feminine and neuter genders.

**N.**    **Duplicate Signatures.** The parties may transmit signatures that are not originals, for example by facsimile or email. Any such signature shall be valid and shall be as binding signature. A duplicate of this Agreement, containing copies of signatures, shall be as valid and enforceable as an original.

**O.**    **Governing Law.** This Agreement shall be governed by the law of the State of Montana.

**P.**    **Costs and Attorney Fees.** In any action to construe, enforce, or seek damages for the breach of, this Agreement, the prevailing party shall be entitled to recover from the other party the reasonable costs and attorney fees incurred, including the costs and attorney fees incurred in obtaining and establishing the amount of such an award, in the amount determined by the Court.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

*PLEASE READ CAREFULLY.  THIS SETTLEMENT AGREEMENT, RELEASE AND COVENANT NOT TO SUE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.*

RENASCENT, INC.

By: _____     _11 – 3 – 11_
       ROSS RICHARDSON              Date
       Special Litigation Master


KELDAN, INC.

By: _____     _11 · 1 · 11_
       KELLEY FLOYD                 Date
       President